UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HUMBERTO R., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 4:20-cv-643-CDL |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision denying benefits.

**I.     Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S.Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the Court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

**II.   Background**

The plaintiff filed an application for Title II disability benefits on September 23, 2016. (R. 33). Plaintiff alleges he became disabled due to a history of traumatic brain injury, neurocognitive disorder, and depression. (R. 18). He was 40 years old on the alleged onset date of October 28, 2012.

Plaintiff alleges short term memory loss and difficulty concentrating due to a head injury he sustained in 2012. (*See* R. 59). He obtained a GED and can read and write. (R. 24). Prior to the alleged onset date, plaintiff worked as a construction laborer and welder's helper. (R. 115). He last worked in a welding and remodeling position in 2019, but he was laid off when the company was shut down. (*Id.*; *see* R. 51). Plaintiff has been let go from other positions since his alleged disability onset date. (R. 56).

Plaintiff lives with his ex-wife, her son, and the couple's 12-year-old daughter. (R. 24). Plaintiff testified that he has lived with his ex-wife since his injury in 2012, and she helps him with things like job applications and taking care of their daughter. *Id.* Plaintiff testified that he occasionally has problems focusing and that he had to ask questions daily at work due to memory problems. *Id.* Plaintiff further testified that he would occasionally "go off" on bosses and has been written up and released from employment. *Id.*

Plaintiff can drive, although he does not have a driver's license because he never paid reinstatement fees from a previous DUI. *Id.* He testified that he smoked marijuana the day before he testified and would use marijuana daily if he could afford it. *Id.* Plaintiff noted in his adult function report that his days consist of helping his daughter get ready for school, cooking, cleaning, and taking care of pets. (R. 24-25). He also performs chores such as yardwork, sweeping, and mopping 20 to 30 minutes every week, with reminders. (R. 25). Plaintiff denied having any problems with personal care. *Id.* Additionally, plaintiff can drive, count change, go out with his friends, and watch television. *Id.* He reported problems with patience, hearing, seeing, memory, completing tasks, concentration,

understanding, following instructions, and getting along with others due to his history of traumatic brain injury. *Id.*

The Commissioner denied plaintiff's application on initial review and on reconsideration. Plaintiff submitted an oral hearing waiver on April 28, 2017. The Administrative Law Judge (ALJ) issued a decision denying benefits on August 10, 2018. (R. 105-120). On July 26, 2019, the Appeals Council granted the plaintiff's request for review of the ALJ's decision. (R. 122-124). The Appeals Council found that plaintiff had rescinded his oral hearing waiver and remanded the case, directing the ALJ on remand to

- Obtain additional evidence concerning the [plaintiff's] impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512)[, and]

- Insure that the [plaintiff] has an opportunity to review, comment on and respond to written interrogatories prior to the administrative hearing.

(R. 122-123).

On remand, the ALJ held a hearing on March 3, 2020. (R. 15).[2] Testimony was given by plaintiff and a Vocational Expert (VE). *Id.* On April 3, 2020, the ALJ issued a decision denying disability benefits. (R. 33). On October 5, 2020, the Appeals Council denied plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1-6). Accordingly, the Court has jurisdiction to review the ALJ's April 3, 2020 decision under 42 U.S.C. § 405(g).

---

[2] Following the Appeals Council's order, plaintiff underwent a neurological consultative examination (CE) with Michael Karathanos, M.D. (R. 29). The ALJ determined that no interrogatories were needed. (*See* R. 16).

4

## III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of his age, education, and work experience. *Id*.

Here, the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity from the alleged onset date of October 28, 2012 through the date last insured of December 31, 2019. (R. 18). At step two, the ALJ determined that plaintiff has the following severe impairments: history of traumatic brain injury, neurocognitive disorder, and depression. *Id*. The ALJ found that plaintiff's headaches, degenerative disc

5

disease of the cervical spine, body mass index of 25.45, and decreased vision in the left eye, are non-severe. *Id.* At step three, the ALJ found that plaintiff's physical and mental impairments do not meet or equal the criteria for any Listing. (R. 19). The ALJ specifically noted plaintiff's physical impairments in connection with Listing 11.18 (Traumatic Brain Injury). *Id.*

With regard to mental impairments, the ALJ found that plaintiff's impairments do not meet or medically equal the criteria of Listings 12.04 (Depressive, Bipolar, and Related Disorders) or 12.02 (Neurocognitive Disorders). *Id.* The ALJ discussed application of the "paragraph B" criteria, finding that Plaintiff has a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 20-22).

The ALJ also discussed whether plaintiff's history of traumatic brain injury equals the criteria of Listing 12.02, noting that a claimant's injury must satisfy Paragraphs (A) and (B) or Paragraphs (A) and (C) of the Listing. (R. 19-20; *see* 20 C.F.R. § 404 Subpt. P App'x 1, 12.02(A)-(C)). Paragraph (A) requires medical documentation of a significant cognitive decline from a prior level of functioning in one or more of the following cognitive areas: complex attention, executive function, learning and memory, language, perceptual-motor, or social cognition. *Id.* Paragraph (C) states the following requirements:

> Your mental disorder in this listing category is "serious and persistent"; that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>
> 2. Marginal adjustment[;] that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Part 404, Subpart P, App'x 1, 12.02(A)-(C).

The ALJ found that the severity of plaintiff's impairments, singly or in combination, do not meet or medically equal the Listing 12.02 criteria under Paragraph (A), (B), and (C). (R. 20). The ALJ first found that the plaintiff failed to satisfy the Paragraph (A) criteria because there is little to no evidence of a significant cognitive decline in the relevant cognitive areas. *Id.* Next, the ALJ determined that plaintiff failed to satisfy the Paragraph (B) criteria because the evidence does not support a finding that his impairments meet the relevant criteria of one extreme or two marked limitations. *Id*. Finally, the ALJ considered whether the Paragraph (C) criteria were satisfied and found that plaintiff failed to establish the presence of the Paragraph (C) criteria. (R. 23). In accordance with these findings, the ALJ proceeded to step four.

At step four, the ALJ determined that plaintiff has the residual functional capacity (RFC) to perform

> a full range of work at all exertional levels but with the following nonexertional limitations: He is able to perform tasks with routine supervision. He is able to relate to supervisors and peers on an occasional work basis. He is able to adapt to a work situation. However, he cannot have any contact with the public.

(R. 23-24). The ALJ explained that, in making this finding, she considered the extent to which plaintiff's symptoms can reasonably be accepted as consistent with the objective

7

medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p. (R. 24). The ALJ also considered medical opinions in the record, in accordance with 20 C.F.R. § 404.1527. *Id.*

At step four, the ALJ found that plaintiff has no past relevant work. (R. 32). Accordingly, the ALJ proceeded to step five. Based on the VE's testimony as to a hypothetical person with plaintiff's age, education, work experience, and RFC, the ALJ found that plaintiff can perform the requirements of the following occupations:

> *Janitor*, medium exertion, unskilled, specific vocational preparation (SVP) level 2, DOT #381.687-018, with 379,000 jobs existing in the national economy;
>
> *Dishwasher*, medium exertion, unskilled, SVP level 2, DOT #318.687-010, with 297,000 jobs existing in the national economy; and
>
> *Hand packager*, medium exertion, unskilled, SVP level 2, DOT #920.587-018, with 204,000 jobs existing in the national economy.

(R. 33). Accordingly, the ALJ concluded at step five that plaintiff is not disabled. *Id.*

## IV.   Discussion

Plaintiff argues that the ALJ failed to adequately explain how she evaluated the CE report of Russell D. Pella, Ph.D. and improperly failed to order additional testing recommended by Dr. Pella.

### A.   Applicable Legal Standards

<u>Medical Opinions</u>

When evaluating an application filed before March 31, 2017, such as plaintiff's here, an ALJ must address an examining source record using the factors set forth in 20 C.F.R. § 416.927(c). Under that provision, "[u]nless we give a treating source's medical

8

opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion":

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered, and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)); *see also* 20 C.F.R. § 416.927. The ALJ must provide good reasons for the weight he ultimately assigns the opinion. *Watkins*, 350 F.3d at 1300-01 (citing 20 C.F.R. § 404.1527(d)(2)). The reasons must be specific enough to make clear to any subsequent reviewers the weight the ALJ assigned to the opinion and the reasons for that weight. *See id.* at 1300; *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (internal citation omitted) (stating that the ALJ must give "specific, legitimate reasons" for rejecting an examining physician's opinion); *Anderson v. Astrue*, 319 F. App'x. 712, 717 (10th Cir. 2009) (unpublished).

<u>Duty to Develop Record</u>

An ALJ "has a basic obligation in every social security case to ensure that an adequate record is developed . . . consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993) (citations, quotations, and brackets omitted). "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the Plaintiff's own version of those facts." *Id*. For

9

example, "the ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Id*. at 1169.

However, an ALJ need not "exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; rather, "[t]he standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997); *cf. Wendelin v. Astrue*, 366 F. App'x 899, 904 (10th Cir. 2010) (unpublished) (rejecting argument that ALJ was required to develop record further where Plaintiff failed to explain how alleged impairments limited her functioning). "The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'" *Hawkins*, 113 F.3d at 1168. (quoting *Baca v. Dept. of Health & Hum. Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993)).

Within the Tenth Circuit, courts "will find a failure to develop the record where (1) the claimant has in some fashion raised the issue sought to be developed by demonstrating a reasonable possibility that a severe impairment exists, and (2) the available records do not supply enough information to make an informed decision about the vocational effect of the asserted impairment." *Yahola v. Apfel*, 139 F.3d 913, 1998 WL 67291, at *2 (10th Cir. 1998) (unpublished) (internal citations and quotation marks omitted); *see also Hawkins*, 113 F.3d at 1167.

B. **Analysis**

Dr. Pella examined the plaintiff on a consultative basis on February 9, 2017. (*See* R. 27). Plaintiff reported that he had suffered a head injury in a fight, and he "described a

brief duration of retrograde amnesia" associated with the injury. (R. 431). Plaintiff's ex-wife, who drove him to the appointment, said that plaintiff had a right frontal skull fracture and that he had been placed on a ventilator for two days after the injury. *Id*. She reported that after being released from the hospital, plaintiff had to relearn how to perform basic tasks and that he still forgets conversations and information, such as appointments and names of objects. *Id*. Plaintiff also reported problems with irritability, "down" mood, high stress level, and frequent worry, but denied hallucinations and reported that his current mood was "fine." *Id*. He reported no other medical problems and does not take any medications. (R. 432).

Dr. Pella observed that plaintiff's hearing and vision were adequate for evaluation purposes. *Id*. Plaintiff's eye contact and interpersonal skills were somewhat withdrawn. *Id*. He was alert, attentive, and oriented x 4, with linear and goal-directed thought process. *Id*. His speech was slowed but within normal limits for articulation, tone, volume, and prosody. *Id*. His comprehension of instructions and conversation was good. *Id*. However, his memory was fair to poor concerning the details of his injury, and his level of insight into his problems was "simplistic, lacking detail, and questionably accurate." *Id*. Dr. Pella assessed plaintiff's judgment to be fair, noting that his response to a hypothetical question reflected reasonable judgment, and his responses to verbal abstraction screening items reflected concrete and literal thinking. *Id*.

Dr. Pella performed multiple assessments, including the Montreal Cognitive Assessment (MoCA) and the Wechsler Memory Scale. He recorded a below-normal MoCA score of 20. *Id*. Dr. Pella explained his objective findings and prognosis, noting:

> [Plaintiff's] mental status and performance on the objective testing were notable for variable performances that ranged from extremely low to well within the average range. While dysexecutive functioning can result in a degree of variable performances, the extremity in performance discrepancies in this profile is unusual and suggests that his effort was not optimal across the testing session. At minimum, his performances on measures often most sensitive to mesial temporal lobe functioning appear intact. It is recommended that additional measurements of his cognitive abilities be assessed to further rule out his level of engagement as well as to quantify suspected deficits in attention, processing speed, and executive functioning.

(R. 433).[3]

Plaintiff argues that the ALJ improperly disregarded the portion of Dr. Pella's opinion recommending further testing. He contends that, based on this recommendation, Dr. Pella's opinion was incomplete, and the ALJ had a duty to elicit further evidence. Alternatively, plaintiff argues that the ALJ failed to properly explain why she rejected this portion of Dr. Pella's opinion.

The ALJ's decision noted that, despite recommending additional testing, Dr. Pella found plaintiff can "attend to, understand, carryout[sic], and remember basic novel instructions in a work setting," and can "learn and remember information after repeated learning trials." (R. 30-31). Although plaintiff's "reliability in [learning and remembering information] over an extended duration could be impacted by . . . possible executive dysfunction," Dr. Pella noted that plaintiff had not shown "problems with his level of pace and persistence" during the examination. (R. 31). Additionally, plaintiff "reportedly had

---

[3] Executive functioning refers to "the mental processes that enable us to plan, focus attention, remember instructions, and juggle multiple tasks successfully." *Ingram v. Saul*, No. 3:19-CV-649, 2021 WL 2355396 (W.D.N.C. June 9, 2021).

no significant problems responding appropriately to supervision, customers, co-workers, and/or in employment settings." *Id*.

The ALJ explained that she gave significant weight to Dr. Pella's opinion because Dr. Pella "conducted a comprehensive interview with [plaintiff] and performed Wechsler Memory Scale . . . and [MoCA] testing to support his opinion." *Id*. During the exam, the plaintiff's "comprehension of instructions and conversation . . . was good." (R. 28). Furthermore, plaintiff "denied that he needed help with performing daily tasks." (R. 27).

An ALJ may order procedures such as diagnostic testing, but an ALJ is only required to do so "when the evidence as a whole . . . is not sufficient to support a decision on [a] claim." 20 C.F.R. §§ 404.1519a(b), 416.919a(b). Here, the ALJ concluded that, despite Dr. Pella's recommendation of further testing to "quantify suspected deficits" in some areas of mental functioning, such testing was not needed in order to determine plaintiff's RFC. As the ALJ explained, additional neuropsychological testing was not necessary, "because the medical evidence of record as documented herein, including neuropsychological testing, additional consultative examinations, and updated treatment records is sufficient to arrive at a decision." (R. 15).

Substantial evidence supports this conclusion. As set forth in the ALJ's opinion, the Commissioner obtained two additional CEs in connection with plaintiff's disability application. First, Arjun Ghodasara, M.D. evaluated plaintiff on January 14, 2017 for complaints of changes in mentation and difficulty concentrating. (*See* R. 26). Dr. Ghodasara noted that plaintiff had been assaulted with a pool cue, resulting in a fall backwards. *Id*. A CT scan showed subdural and subarachnoid hemorrhage and skull

13

fracture. *Id*. During the CE with Dr. Ghodasara, plaintiff's ex-wife reported that he had "changed" since the incident, with increased difficulty with short-term memory and difficulty concentrating. *Id*. Plaintiff also reported headaches and decreased vision in both eyes. *Id*. However, plaintiff was not taking any medications and reported that he could complete activities of daily living slowly but without assistance. *Id*.

Dr. Ghodasara measured a corrected visual acuity of 20/20. *Id*. Plaintiff was alert and fully oriented, with normal affect and congruent mood. *Id*. He had non-tangential thought processes but was inattentive. *Id*. Dr. Ghodasara assessed a history of assault causing subdural and subarachnoid hemorrhage and skull fracture, as well as short-term memory difficulty, inattentiveness, and decreased sensation on the left side of the body. *Id*.

Plaintiff also received a neurological CE with Michael Karathanos, M.D. on September 18, 2019. (R. 29-30). Dr. Karathanos's "mental status and physical examinations were essentially normal." (R. 31). Although Dr. Karathanos "opined that neuropsychological evaluation was indicated," the ALJ found "no indication that [Dr. Karathanos] was aware that previous neuropsychological assessment had been completed." *Id*. Accordingly, the ALJ assigned "little to no weight" to that statement. *Id*. The ALJ further noted, "it appears that Dr. Karathanos[] relied heavily on the [plaintiff's] subjective complaints as his mental status and neurological examinations were largely unremarkable." *Id*.

The ALJ also discussed plaintiff's most recent treatment records. For example, during a primary care visit with John Charles Hervert, D.O. on March 26, 2019, plaintiff "admitted that he had never sought counseling or been on medication." (R. 29). Dr. Hervert

14

prescribed Celexa and referred plaintiff for cognitive behavioral therapy. *Id*. On May 28, 2019, plaintiff returned to Dr. Hervert and "reported positive benefits from Celexa for depression." *Id*. Plaintiff was fully oriented, with normal mood, affect, and behavior, and normal thought content and judgment. *Id*. Dr. Hervert found plaintiff's depression "was much improved on Celexa." (*Id*.; *see* R. 473). Additionally, the ALJ considered the opinions of state agency reviewing psychologists, who opined that, despite moderate limitations in two domains (understanding, remembering, or applying information and concentrating, persisting, or maintaining pace), plaintiff retains the RFC to "perform simple tasks with routine supervision, relate[] to supervisors and peers on a superficial work basis, and adapt to a work situation." (R. 30).

As such, substantial evidence supports the ALJ's finding that further development of the record was not necessary to reach a decision. The findings of three consultative examiners, combined with plaintiff's medical treatment records and subjective statements, provided enough information for the ALJ to assess plaintiff's functional limitations. *See, e.g.*, *Yahola*, 139 F.3d 913, 1998 WL 67291, at *2 (internal citations and quotation marks omitted) (despite physician's suggestion of additional testing, the available evidence "supplied all that was necessary for the ALJ to make an informed decision regarding [claimant's] ability to perform the occupations identified by the [VE]"); *see also Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[B]ecause it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much evidence to gather should generally be respected.").

Plaintiff argues that the ALJ failed to provide an adequate explanation for rejecting Dr. Pella's suggestion of additional testing. An ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). However, this does not prohibit an ALJ from agreeing with a portion of a medical opinion while disagreeing with another portion of the same opinion. Rather, if an ALJ determines that one part of a medical opinion is persuasive while another part is not, the ALJ must explain why. *See Chapo*, 682 F.3d at 1292 (finding error when the ALJ gave "no explanation at all as to why one part of [the medical] opinion was creditable and the rest was not").

Here, the RFC determination is consistent with Dr. Pella's assessment. While Dr. Pella recommended additional testing, his narrative discussion explains that such testing would help to "further rule out" plaintiff's ability to engage and to "quantify" cognitive deficits—not that it would invalidate his other findings about the "minimum" level of functionality, which included scores ranging "well within the average range." (R. 433). The ALJ's decision thus supplied good reasons for the weight accorded to Dr. Pella's opinion. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (where the "ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened").

Additionally, as the ALJ's decision explained, additional medical evidence supports the mental RFC determination—including the CE reports of two additional physicians, the opinions of reviewing psychologists, and plaintiff's medical treatment records. (*See* R. 15).

Subjective statements by plaintiff and his ex-wife further support the ALJ's decision. For example, plaintiff reported being able to "help his daughter get ready for school, [and] perform household chores such as cooking, cleaning, and yard work," and plaintiff's ex-wife reported that he took care of their animals. (R. 21). As such, the ALJ provided a reviewable and adequate explanation for determining that no further testing was needed to decide plaintiff's claim.

## Conclusion

As set forth above, the ALJ's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, the decision of the Commissioner finding plaintiff not disabled is **affirmed.**

SO ORDERED this 16th day of August, 2022.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge